IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MARK A. VROMAN,**             Case No. 1:16 CV 487

    Plaintiff,

    v.                                   Magistrate Judge James R. Knepp II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                       MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Mark A. Vroman ("Plaintiff") filed a complaint against the Commissioner of Social Security ("Commissioner"), seeking judicial review of the Commissioner's decision to deny supplemental security income benefits ("SSI") and disability insurance benefits ("DIB"). (Doc. 1). The parties consented to the jurisdiction of the undersigned in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 13). For the reasons stated below, the Commissioner's decision is affirmed.

### PROCEDURAL BACKGROUND

Plaintiff filed an application for SSI and DIB in December 2012, alleging disability as of August 2012. (Tr. 212, 216). The claims were denied initially and on reconsideration. (Tr. 132, 141, 152, 159). An administrative law judge ("ALJ") held a hearing in March 2015. (Tr. 34-68). Following the hearing, the ALJ issued an unfavorable decision. (Tr. 10). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. Plaintiff filed the instant action on March 1, 2016. (Doc. 1).

**FACTUAL BACKGROUND**

Personal Background and Testimony

Plaintiff was born January 18, 1967, and was forty-seven years old on the day of the hearing. (Tr. 70). He has a high school education and past work experience as an industrial truck operator, material handler, and mixer operator. (Tr. 25)

Plaintiff testified he took a voluntary layoff in 2011 because his back "was hurting." (Tr. 39). He performed seasonal work at Kmart receiving and unloading trucks in 2012 and 2013. (Tr. 40). Plaintiff lifted "[n]o more than 10 pounds"; his coworkers lifted the heavier objects. (Tr. 40-41). Plaintiff began receiving neuro spinal care from Dr. Gupta in October 2012. (Tr. 43). Dr. Gupta performed nerve block injections, Cortisone injections, nerve burnings, and prescribed medication. (Tr. 44). Cutting the grass takes an hour to an hour-and-a-half (compared to 20 minutes), because of "back pain and the walking" involved. (Tr. 45). Bending, twisting, and lifting makes the pain worse; lounging reduces the pain. *Id*. At home, Plaintiff will "sit for a while"; "stand up for a while"; then lie down with his TENS unit. (Tr. 45-46). Plaintiff can stand for a half an hour; other times, fifteen minutes. (Tr. 47). Plaintiff needs to "lie down and recline" for approximately one hour after sitting or standing. (Tr. 49). It takes Plaintiff "a minute" to stand up (Tr. 47); sometimes he needs to "brace [himself] on something in order to stand up[]" (Tr. 47-48).

Other than mow the grass, Plaintiff "tr[ies] to keep up with the dishes" by rinsing them off and placing them in the dishwasher; does "real light vacuum[ing]"; "pick[s] up [] dog hair in the hallway"; and "sometimes do[es] the laundry." (Tr. 51). At times, Plaintiff has trouble putting on his shoes and socks. (Tr. 49-50).

2

Plaintiff lives with his wife and ten-year-old daughter. (Tr. 50). He can drive for 30 minutes before he needs to stop and get out to walk around because "[his] back starts hurting and [his] legs start going numb and tingling." (Tr. 51-52).

Plaintiff reported to the state agency he vacuums, does his own laundry, loads the dishwasher (Tr. 265), walks for exercise ("not long distances"), shops with his wife (Tr. 266), visits with family (Tr. 267), goes out for dinner (Tr. 249), and goes to the local racetrack (Tr. 267).

<u>VE Testimony and ALJ Decision</u>

A VE testified at the ALJ hearing. (Tr. 56-58). The ALJ first asked the VE to consider a hypothetical individual with Plaintiff's age, education, and vocational background who could:

> perform light work with climbing ramps and stairs frequently, never climbing ladders, ropes or scaffolds, frequently stooping, occasionally kneeling, crouching, crawling with the capacity to reach overhead occasionally with the right upper extremity and who would have to avoid all exposure to hazards defined as industrial machinery, unprotected heights and similar things.

(Tr. 57). The VE testified such an individual could work as an inspector and hand packager, an assembler of optical products, or an inspector of electrical equipment. (Tr. 57-58). The ALJ then asked the VE to again consider the first hypothetical, but added a limitation of overhead reaching. (Tr. 61). The VE stated that may "[s]omewhat" reduce the light occupational base available to the individual. *Id*.

In her written decision, the ALJ concluded Plaintiff has not engaged in substantial gainful activity since his alleged onset date (Tr. 15), and has severe impairments of "lumbar degenerative disc disease with intervertebral disc protrusion, joint arthropathy, right rotator cuff tear, and cervical spondylosis" (Tr. 16). She concluded these impairments did not meet or equal the listings and Plaintiff retained the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can never climb ladders, ropes or scaffolds. He can frequently climb ramps and stairs

3

and frequently stoop. He can occasionally kneel, crouch and crawl. The claimant is limited to only occasional overhead reaching with the right upper extremity. He would need to avoid all exposure to hazards such as industrial machinery and unprotected heights.

(Tr. 18). Based on the VE's testimony, the ALJ concluded Plaintiff could perform jobs in the national economy and therefore was not disabled. (Tr. 26-27).

Relevant Medical Evidence[1]

Beginning August 2011, William Damm, M.D., began treating Plaintiff for back pain. (Tr. 299-325). Examinations revealed lumbar spine and SI joint tenderness and pain, pain with range of motion, decreased range of motion, positive left straight leg raise, decreased sensation, and spasm. (Tr. 300, 306-07, 310, 312-13). An x-ray revealed "minimal degenerative changes in the left L5/S1 facet joint". (Tr. 323-24).

In June 2012, neurosurgeon Domingo Gonzalez, M.D., saw Plaintiff. (Tr. 347-48). Dr. Gonzalez diagnosed Plaintiff with "Mechanical back pain secondary to mild degenerative changes lumbar spine", and recommended physical therapy and an MRI. (Tr. 348). The MRI showed "a herniated disk at L5 lateralized towards the left side [and] degenerative changes with foraminal compromise at L4-L5 and L5-S1 bilaterally." (Tr. 345). Dr. Gonzalez referred Plaintiff to pain management for L4-L5 and L5-S1 facet injections. *Id*.

Between September 2012 and February 2014, Plaintiff saw primary care physician Dr. Damm five times. (Tr. 317-22, 371-72, 435-42). In September, Dr. Damm reviewed Plaintiff's MRI results and examined Plaintiff for back pain. (Tr. 317). The examination revealed decreased range of motion, pain, and spasm, but no tenderness, swelling, or edema. *Id*. Dr. Damm's MRI

---

1. Plaintiff does not challenge the ALJ's findings with respect to his alleged mental impairments. Therefore, the discussion of medical evidence is limited to records related to Plaintiff's physical impairments. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (issues not raised in claimant's brief waived).

review demonstrated "Disc protrusion eccentric toward the left without effect upon the thecal sac" and a slight affect on the left S1 nerve root. (Tr. 318). In December, Dr. Damm documented Plaintiff had lumbar tenderness, bony tenderness, and pain. (Tr. 321). In February 2014, he noted Plaintiff had tenderness to palpation of the lumbar spine, diminished range of motion with pain, an abnormal gait and heel walk, and an inability to toe walk. (Tr. 441). Dr. Damm also noted Plaintiff's steroid injections did not have a prolonged benefit. *Id*.

Beginning in September 2012, Plaintiff saw anesthesiologist and pain management specialist Parshotam Gupta, M.D. (Tr. 702). He performed bilateral facet joint block injections at L4-L5 and L5-S1. *Id*. At a follow-up appointment in October 2012, Plaintiff expressed the block injections had provided "80% to 100%" pain relief. (Tr. 341). Dr. Gupta also noted ibuprofen and Vicodin helped bring Plaintiff's pain "down to almost nothing". *Id*. Dr. Gupta found there was some tenderness in the lower part of the lumbar spine; limited and painful rotation; negative straight leg raises; and the FABER test for back pain was negative on the left and right side. *Id*. Dr. Gupta also noted a normal gait and normal strength and reflexes in the upper and lower extremities. *Id*. Plaintiff was diagnosed with "[f]acet joint arthropathy L4-5, L5-S1 improved almost 100% after the block"; "[d]egenerative disk disease of the lumbar spine"; and "[l]umbar spinal stenosis." *Id*.

In October 2012, Dr. Gupta performed right- and left-sided ablations. (Tr. 354, 357). Dr. Gupta then met with Plaintiff three times over the course of the next three months. (Tr. 335-40). While Plaintiff complained he still had pain and experienced numbness down his thighs when sitting for a long time, examination revealed no muscle spasm, well preserved and pain free range of motion, normal strength and reflexes, and negative straight leg raises. (Tr. 335, 337, 339).

5

In March 2013, Plaintiff complained of numbness in his thighs due to long sitting and standing. (Tr. 468). Dr. Gupta's examination revealed tenderness in the lower part of the spine, but 1/4 reflexes, normal strength, negative straight leg raises, and no muscle spasm or weakness. *Id*. Dr. Gupta prescribed Plaintiff with medication and a cane, and advised Plaintiff use a TENS unit. *Id*. A second examination in March revealed tenderness in the left SI joint and 1/4 reflexes. (Tr. 467). Dr. Gupta recommended a "Left S1 joint block, maybe L3 4-5 medial branches ablation on the left side". *Id*.

In April 2013, Dr. Gupta performed right and left bilateral SI joint blocks. (Tr. 693-97). At a follow-up appointment, Plaintiff disclosed "[h]e was pain free for about a week or so, then the pain came back." (Tr. 466). Dr. Gupta's examination revealed "tenderness in the lower part of the lumbar spine in the bilateral SI joint" and limited and painful bilateral rotation, but normal strength, zero reflexes, and negative straight leg raises. *Id*.

At a follow-up appointment in June of 2013, Plaintiff disclosed that, while "moving around and bending [] increas[ed] the pain", radiofrequency "helped to some extent because he [could] do certain things which he could not do before." (Tr. 465). Dr. Gupta's examination revealed tenderness in the lower part of the lumbar spine, decreased range of motion, mild pain, zero reflexes, but normal strength and negative straight leg raises. *Id*. Dr. Gupta diagnosed bilateral SI joint arthropathy, status post bilateral radiofrequency, lumbar spondylosis, lumbar spinal stenosis with neural claudication, and chronic pain syndrome. *Id*.

In July 2013, Plaintiff complained of lower back pain, cramping in his thigh area, and leg weakness. (Tr. 644). Dr. Gupta examined Plaintiff. *Id*. He found tenderness in the bilateral paraspinal area, decreased range of motion, mild to moderate pain, normal strength, zero reflexes,

and negative straight leg raises. *Id*. He diagnosed Plaintiff with "[f]acet joint arthropathy of the lumbar spine" and "[b]ilateral SI joint arthropathy". *Id*.

Dr. Gupta saw Plaintiff three times between August 2013 and October 2013. (Tr. 636, 638, 641). Plaintiff complained of lower back pain, neck pain, increased pain with sitting, standing, and long walking. *Id*. Specifically, Plaintiff said when he walks long distances, both his legs get weak and he has to "sit or lie down" before he can walk again. (Tr. 638). Examination revealed tenderness in the bilateral SI joint and the lower part of the lumbar spine, decreased range of motion, but 1/4 reflexes, normal strength, no muscle spasm, and negative straight leg raises. (Tr. 636, 638, 641).

Plaintiff reported in December 2013 that he was "pain-free"; then, in January 2014, that sitting and standing increased his pain. (Tr. 631, 633). Examinations revealed mild tenderness in the lower part of the lumbar spine, restricted and painful range of motion, zero reflexes, but no muscle spasm, normal strength, and negative straight leg raises. *Id*.

In February 2014, Plaintiff fell and injured his back. (Tr. 627). Dr. Gupta's examination revealed "tenderness of a severe nature in the right SI joint", decreased range of motion, normal strength, 1/4 reflexes, and negative straight leg raises. *Id*. In March 2014, Dr. Gupta performed a "[r]ight SI joint injection". (Tr. 681-82).

At a follow-up appointment in April 2014, Plaintiff reported, "[r]ight side pain is much better after [Dr. Gupta's] block [injections]."(Tr. 623). Examination revealed tenderness in the left SI joint and painful right-sided range of motion, but normal reflexes, normal strength, and negative straight leg raises. *Id*. An x-ray of the cervical spine revealed a "[c]alcified nodule, likely lymph node within the subcutaneous lower neck corresponding with the patient's palpable finding" and

7

minimal arthritic changes. (Tr. 666-68). During the same month, Plaintiff reported to the Nord Center he does yardwork. (Tr. 482).

Between October 2014 and February 2015, Plaintiff saw Dr. Gupta five times. (Tr. 794-97). In October, Plaintiff disclosed that he was experiencing radiating pain down his leg, but that his pain improved with the block injections. (Tr. 797).

In February 2015, Plaintiff saw Dr. Damm. (Tr. 794). Plaintiff reported injections were "significantly beneficial" as, while he had some leg numbness, it "improved since the epidural injections." *Id*. He reported his back brace is helpful and that medication "allow[s] him to function and do things around the house and chores." *Id*.

Opinion Evidence

### *State Agency Physician Opinions*

In May 2013, state agency physician Dimitri Teague, M.D., reviewed the record. (Tr. 77-81). Dr. Teague reported Plaintiff could: (1) lift and/or carry 20 pounds occasionally and ten pounds frequently; stand and/or walk "About 6 hours in an 8-hour workday"; (3) climb ramps/stairs and stoop frequently; (4) kneel, crouch, and crawl occasionally; (5) never climb ladders, ropes, or scaffolds; (6) perform right overhead reaching occasionally; and (7) avoid all exposure to hazards (machinery, heights, etc.). (Tr. 93-95). In August 2013, state agency physician William Bolz, M.D., reviewed the record. (Tr. 108-11). He made identical findings. *Id*.

### *Dr. Gupta's Opinion*

Dr. Gupta filled out two Medical Source Statements in February 2013 and March 2015. (Tr. 328-29, 810-11). In February 2013, Dr. Gupta noted Plaintiff could perform less than six hours of sedentary work each day, stand/walk fifteen minutes or less at one time, sit for fifteen minutes or less at one time, and lift/carry five pounds or less occasionally. (Tr. 328). He found Plaintiff can

8

finger, handle, and reach occasionally (*Id.*), and would need to lie down two hours or more during an eight-hour workday (Tr. 329). Last, he found Plaintiff would likely be absent more than three days per month and off task more than 33 percent of the time due to pain. *Id*. He determined Plaintiff's complaints were reasonably caused by his conditions, which had lasted for at least twelve months. *Id*.

In March 2015, Dr. Gupta made the exact same findings, but in addition noted Plaintiff can stoop occasionally, balance for fifteen minutes or less, and, Plaintiff will need to elevate his legs waist high or higher two hours or more. (Tr. 811). Dr. Gupta noted the conditions causing Plaintiff's pain include lumbar spondylosis, sacroiliitis, lumbar stenosis, and chronic pain. *Id*.

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's RFC and can claimant perform past relevant work?

5. Can claimant do any other work considering his RFC, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id*. The court considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id*. Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

**DISCUSSION**

Plaintiff argues the ALJ failed to properly weigh the opinions of Plaintiff's treating physician, Dr. Gutpa, and state agency physicians, Drs. Teague and Bolz. (Doc. 16).

*Dr. Gupta*

Plaintiff contends the ALJ erred by failing to apply the 20 C.F.R. § 404.1527(c) factors in her evaluation of Dr. Gupta's opinions. (Doc. 16, at 18). Specifically, Plaintiff argues, the ALJ, in evaluating the consistency and supportability of Dr. Gupta's opinions, considered only whether the opinions deserved controlling weight. (Doc. 16, at 17-18). Plaintiff also argues, in assigning Dr. Gupta limited weight, she failed to apply the § 404.1527(c) factors. The undersigned disagrees. By focusing on the factors of consistency and supportability, the ALJ determined controlling weight and provided "good reasons" for the weight she assigned Dr. Gupta's opinions.

Plaintiff's argument implicates the well-known treating physician rule. Generally, the medical opinions of treating physicians are afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)).

A treating physician's opinion is given "controlling weight" if it is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." *Id*. In contrast, "[a] physician's opinion based on a claimant's subjective allegations, rather than the medical evidence, is not entitled to significant

11

weight." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004). If the ALJ does not afford a treating source opinion "controlling weight," she must give "good reasons" why she refused to do so. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013).

"Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewer the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *4). These reasons serve a second purpose, and that is to provide Plaintiff with an explanation for the ALJ's reasoning for a finding of not disabled. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Further, "[i]f the ALJ does not accord the opinion of the treating source controlling weight, it must apply certain factors" to assign weight to the opinion. *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)[2]). These factors include the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id*. An ALJ is not required to enter into an "exhaustive factor-by-factor analysis" to satisfy the "good reasons" requirement. *Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

Plaintiff concedes the ALJ considered the factors of supportability and consistency, but avers the ALJ "expressly spoke only to… the test for determining controlling weight." (*Id*. at 21). Plaintiff fails to acknowledge, however, supportability and consistency are also two of the six factors under which an ALJ may discount a treating physician's opinion. *See* 20 C.F.R. § 404.1527(c)(3)-(4); *see Winningham v. Colvin*, 2014 WL 2920011, at *19 (M.D. Tenn.) (affirming ALJ's explanation provided "good reasons" where ALJ focused on the factors of supportability

---

2. Effective March 26, 2012, 20 C.F.R. § 404.1527(d) became § 404.1527(c).

12

and substantial evidence supports her decision); *Stafford v. Astrue*, 2011 WL 4481016, at *13 (M.D. Tenn), *report and recommendation adopted*, 2011 WL 4479840 (M.D. Tenn.) (similar findings).

Dr. Gupta filled out two Medical Source Statements. (Tr. 328-29, 810-11). The latter added three new categories: Plaintiff's ability to stoop and balance; and, in an eight-hour workday, Plaintiff's need to elevate his legs waist high or higher for two hours or more. (Tr. 811). Dr. Gupta's findings were otherwise identical. (Tr. 328-29, 810-11). Dr. Gupta limited Plaintiff to less than six hours of sedentary work each day, standing or walking fifteen minutes or less at one time, sitting for fifteen minutes or less at one time, and lifting or carrying five pounds or less occasionally; fingering, handling, and reaching occasionally; needing to lie down two hours or more during an eight-hour workday; being absent more than three days per month; off task more than 33 percent of the time due to pain; stooping occasionally; balancing for fifteen minutes or less; and elevating his legs at least waist high for two hours or more. *Id*. The ALJ gave Dr. Gupta's opinions limited weight because Dr. Gupta's objective findings, Plaintiff's own activities, and the objective record do not support such extreme limitations. (Tr. 23-24).

First, Plaintiff takes issue with the fact that the ALJ did not explain why the MRI findings of "a herniated lumbar disc affecting the left S1 nerve root" did not support Dr. Gupta's limitations. (Doc. 16, at 19). He contends "[i]t was the MRI findings that caused his primary care physician to send him to pain management under Dr. Gupta." *Id*. However, the ALJ has no duty to explain all that he has considered; he is only required to consider the evidence as a whole. *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009). Additionally, "an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (internal citation omitted). Further, as the Commissioner correctly points out, (Doc.

19, at 11), "the mere diagnosis . . . says nothing about the severity of the condition." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *see also Young v. Sec'y of Health & Human Servs.*, 964 F.2d 146, 151 (6th Cir. 1990). In determining a claimant's RFC, an ALJ considers all relevant evidence, including subjective complaints and statements regarding limitations, medical records, and observations of treating physicians and others in the record. 20 C.F.R. § 404.1545(a).Ultimately, it is the ALJ's responsibility to "make factual and legal determinations, and for weighing the record evidence, and resolving conflicts therein." *Wochner v. Colvin*, No. 1:16CV347, 2016 WL 4917105, at *5 (N.D. Ohio 2016).

Second, Dr. Gupta's objective record reflects Plaintiff consistently had well-preserved and pain-free range of motion, no muscle spasm or weakness, normal strength, negative straight leg raises, no swelling, and no edema. (Tr. 317, 335, 337, 339, 465-66, 468, 623, 631, 633, 636, 638, 641, 644). Further, Dr. Gupta's record reflects Plaintiff's symptoms improved with treatment. (Tr. 465, 465-68, 636, 794, 796-800). The regulations identify medication and other pain-relieving treatment as factors to consider in evaluating a social security plaintiff's allegations of disability. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), (v).

Third, Dr. Gupta's restricted findings are inconsistent with Plaintiff's own activities and statements. Plaintiff reported to the Social Security Administration he does his own laundry, loads the dishwasher, shops with his wife, goes out for dinner, goes to the racetrack, and walks for exercise. (Tr. 247, 249, 265-67). He testified he mows the lawn, vacuums, and picks up dog hair. (Tr. 45, 51). Plaintiff also reported to the Nord Center he does yardwork. (Tr. 482). Last, the ALJ noted Dr. Gupta's opinion "Plaintiff was limited to standing no more than fifteen minutes and lifting less than five pounds" was inconsistent with Plaintiff's contemporaneous reports he was "working lifting up to 10 pounds and standing for more than 15 minutes". (*See* Tr. 40).

Fourth, Plaintiff argues Dr. Gupta's limitation that Plaintiff would need to lie down for two hours or more in an eight-hour workday is not inconsistent with Plaintiff's own testimony he needs to lie down for an hour at a time. (Doc. 16, at 19, 21). The undersigned agrees. The record reflects Plaintiff's testimony:

> Q  How soon is it, let's say you started nine o'clock in the morning and you started sitting, standing how long is it before you need to lie down and recline?
> A  Approximately an hour.

(Tr. 49). As the Commissioner correctly points out, the ALJ mischaracterized the Plaintiff's testimony as Plaintiff lies down for an hour at a time, however, the ALJ also noted the objective record did not support a need to lie down for two hours or more a day. (Tr. 24). The ALJ stated that the objective record does not support a need for Plaintiff to lie down during an eight-hour workday. (Tr. 24). The Court agrees. The objective record shows Plaintiff experienced relief with medication, block injections, steroid injections, and with the use of a TENS unit (Tr. 46, 438, 465-70, 615, 619, 621, 623, 627, 631, 633, 636, 638, 641, 644, 646, 648, 650, 652, 655, 657, 659, 661, 710, 790, 795-800), and was able to do chores around the house, yardwork, and walk for exercise (Tr. 265-66, 482).

Therefore, the ALJ provided "good reasons" for not assigning Dr. Gupta's opinions controlling weight, speaking to the factors of consistency and supportability. (Tr. 23-24). The same explanation also provided adequate reasons for assigning the opinions "little weight" and "some weight". *Id. See Wilson*, 378 F.3d at 544 (an ALJ's "good reasons" are "sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight").

Dr. Gupta's objective record, Plaintiff's own activities and statements, and the record evidence as a whole, do not support Dr. Gupta's extreme limitations. (Tr. 23-24); *see* 20 C.F.R. §

15

404.1527(c)(3)-(4). The undersigned, therefore, finds the ALJ provided "good reasons" for the weight assigned to Dr. Gupta's opinions, and substantial evidence in the record supports her determination. Importantly, even if substantial evidence or indeed a preponderance of the evidence supports Plaintiff's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *See Jones*, 336 F.3d at 477.

### *Drs. Teague and Bolz*

Non-examining sources are physicians, psychologists, or other acceptable medical sources that have not examined the claimant, but review medical evidence and provide an opinion. 20 C.F.R. § 416.902. The ALJ will consider the findings of these non-examining sources as opinion evidence, except as to the ultimate determination about whether Plaintiff is disabled. § 416.927. "[T]he opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight." *Douglas v. Comm'r of Soc. Sec.*, 832 F. Supp. 2d 813, 823-24 (S.D. Ohio 2011). This is because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." *Id.*; § 416.927(c), (d); SSR 96–6p, 1996 WL 374180, at *2–3. "Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Douglas,* 832 F. Supp. 2d at 823-24.

Plaintiff argues the ALJ erred by "fail[ing] to apply [the § 404.1527(c)] factors" to the opinions of Drs. Teague and Bolz[3]. (Doc. 16, at 24). Drs. Teague and Bolz made the same findings.

---

3. Of note, Plaintiff refers to the opinions of state agency "psychologists". (Doc. 16, at 24). It is likely this reference was in error and Plaintiff instead challenges the ALJ's reliance on the opinions of the state agency physicians reviewing Plaintiff's physical impairments. Further, Plaintiff's reply brief refers to the opinions of state agency physicians only. (Doc. 20, at 2-3). Even if it was not an error, Plaintiff waives argument regarding the state agency reviewing psychologists' opinions. *See*

16

They both limited Plaintiff to occasional stooping, kneeling, crawling, right overhead reaching; frequent stooping and climbing ramps or stairs; unlimited balancing; and never climbing ladders, ropes, or scaffolds. (Tr. 78-83, 108-09). The ALJ gave these opinions great weight:

> As for the State agency medical consultants' physical assessment, the undersigned gives the assessments great weight. In addition to other limitations, Dimitri Teague, M.D, and William Bolz, MD, opined the claimant was limited to light work with right overhead reaching limited to occasionally. (Ex. 1A; 3A; 5A; 7A). The treating physician's objective findings support these opinions including findings of tenderness, muscle spasms, occasional decreased range of motion and right rotator cuff tear. The claimant reports sufficient relief of pain with medication and other conservative treatment, therefore Dr. Teague and Dr. Bolz's opinions are given great weight.

(Tr. 25). The ALJ supported his explanation by focusing on the factors of consistency and supportability. *See* 20 C.F.R. § 404.1527(c)(3)-(4).

First, as the ALJ explained, Dr. Gupta's objective findings and Plaintiff's testimony are consistent with, and support, such limitations. Dr. Gupta reported Plaintiff experiences sufficient pain relief with treatment such as medication, block injections, steroid injections, and with the use of a TENS unit. (Tr. 46, 438, 465-70, 615, 619, 621, 623, 627, 631, 633, 636, 638, 641, 644, 646, 648, 650, 652, 655, 657, 659, 661, 710, 790, 795-800). Further, the findings of right rotator cuff tear support Drs. Teague and Bolz's limitation of limited overhead reaching. (Tr. 467).

Moreover, Plaintiff's own activities and statements support Drs. Teague and Bolz's limitations. Plaintiff reported he does his own laundry, loads the dishwasher, vacuums, picks up dog hair, shops with his wife, goes out for dinner, goes to the racetrack, and walks for exercise. (Tr. 249, 265-67). Plaintiff also reported to the Nord Center he does yardwork. (Tr. 482). Further, the ALJ noted Dr. Gupta's opinion "Plaintiff was limited to standing no more than fifteen minutes

---

*Thomas v. United States*, 2017 WL 727152, at *6 (6th Cir. 2017) ("A party waives issues that he adverts to in a perfunctory manner, unaccompanied by some effort at developed argumentation.").

and lifting less than five pounds" was inconsistent with Plaintiff's contemporaneous reports he was "working lifting up to 10 pounds and standing for more than 15 minutes". (Tr. 40).

The ALJ's explanation for giving great weight to the state agency reviewers' opinions focuses on the factors of supportability and consistency, (Tr. 25), and is supported by substantial evidence. The undersigned, therefore, finds the ALJ's explanation adequate to support her findings.

## CONCLUSION

Following review of the arguments presented, the record, and applicable law, the Court finds the ALJ's decision is supported by substantial evidence. Therefore, the Commissioner's decision denying benefits is affirmed.

IT IS SO ORDERED.

s/James R. Knepp II<br>
United States Magistrate Judge